UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VICKI BLAKLEY, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | CASE NO. C08-5186BHS-KLS <br><br> REPORT AND RECOMMENDATION <br><br> Noted for January 16, 2008 |

Plaintiff, Vicki Blakley, has brought this matter for judicial review of the denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 54 years old.[1] Tr. 24. She has a high school education and past work experience as a bindery operator, bindery worker and cutter operator. Tr. 21, 89, 94, 98.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

On October 3, 2003, plaintiff filed an application for disability insurance benefits, alleging disability as of November 19, 1993, due to an inability to lift, sleeping problems, fibromyalgia, back and neck problems, bone spurs, acid reflux, tennis elbow, depression, memory loss, and migraines. Tr. 15, 79-81, 88, 97. Her application was denied initially and on reconsideration. Tr. 24-26, 31. A hearing was held before an administrative law judge ("ALJ") on January 24, 2006, at which plaintiff, represented by counsel, appeared and testified, as did two lay witnesses and a vocational expert. Tr. 422-66.

On June 22, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity at any time relevant to the decision;

(2) at step two, plaintiff had a "severe" impairment consisting of fibromyalgia;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform light work, with certain additional non-exertional limitations;

(5) at step four, plaintiff was unable to perform her past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 15-22. Plaintiff's request for review was denied by the Appeals Council on January 31, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 5; 20 C.F.R. § 404.981.

On March 27, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on June 10, 2008. (Dkt. #8). Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred in relying on vocational expert testimony which conflicted with the Dictionary of Occupational Titles ("DOT") without inquiring about or resolving the conflict. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be reversed, and that this matter be remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

1 such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ Erred in Relying on the Vocational Expert's Testimony

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed the following hypothetical question to the vocational expert:

> . . . Please assume a worker 47 years of age, please assume that this worker has the same educational and vocational background as Ms. Blakley. Please assume this worker

> is limited to simple, routine, repetitive work. [T]his worker is limited to light exertional levels of work. Worker can only occasionally engage in any climbing, balancing, stooping, kneeling, crouching or crawling. This worker cannot engage in any work requiring constant handling or fingering. Up to frequent is acceptable, but not constant. This worker should not work ion [sic] any hazardous environments, including moving equipment, machinery or unprotected heights. Worker should not work in any concentrated dust, fumes, odors or gases. . . .

Tr. 461-62. In response to this question, the vocational expert testified that such a hypothetical worker would be unable to perform any of plaintiff's past relevant work, but could perform the jobs of surveillance system monitor (DOT 379.367-010) and telemarketer (DOT 299.357-014). Tr. 462. With respect to the former job, the vocational expert testified that it was sedentary, unskilled work. Id. In regard to the latter job, the vocational expert testified that while it had a special vocational preparation ("SVP")[3] of 3, in her experience "employers hire entry level applicants" for that job. Id. Based on this testimony, the ALJ found plaintiff capable of performing other work existing in significant numbers in the national economy, and therefore not disabled. Tr. 21-22.

Plaintiff argues the ALJ erred in relying on the vocational expert's testimony here. Specifically, she asserts the ALJ failed to ask the vocational expert whether her testimony regarding the telemarketer job was consistent with the description thereof contained in the DOT. Plaintiff also asserts there is an additional conflict between the vocational expert's testimony and the definitions of the jobs of surveillance system monitor and telemarketer contained in the DOT, in that the ALJ's hypothetical question – upon which the vocational expert relied to find plaintiff could perform those jobs – contained a limitation to simple, routine and repetitive work, while the DOT requires persons who perform them to have a general education development ("GED")[4] reasoning level of three, or Level 3 reasoning.[5] The undersigned agrees the ALJ erred in both instances.

---

[3] SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C. An SVP of 3 denotes a period of "[o]ver 1 month up to and including 3 months." Id.

[4] GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance," and "is education of a general nature which does not have a recognized, fairly specific occupational objective." DOT, Appendix C. In addition, while "[o]rdinarily, such education is obtained in elementary school, high school, or college . . . it may be obtained from experience and self-study." Id.

[5] "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." DOT, Appendix C. Level 3 reasoning falls under the Reasoning Development division, and is defined as: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Id.

The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the Dictionary of Occupational Titles ("DOT"). Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

Before getting to the specifics of the inconsistencies the ALJ failed to inquire about and resolve, the undersigned first will address the contention by defendant that it was plaintiff's responsibility to identify and bring to the attention of the ALJ any such inconsistencies by questioning the vocational expert at the hearing. In so contending, defendant relies on the Seventh Circuit's decision in Donahue v. Barnhart, 279 F.3d 441 (7th Cir. 2002). Defendant's reliance on Donahue, however, is misplaced. There, the Seventh Circuit analogized to the Federal Rules of Evidence to find that the ALJ is required to make the requisite inquiry only when the basis of the vocational expert's conclusions is questioned at the hearing. Id. at 446-47. The Seventh Circuit also read SSR 00-4p to require the ALJ to "[e]xplain [in the] determination or decision how any conflict [with the *Dictionary*] that *has been identified* was resolved." Id. at 446 (citing to SSR 00-4p) (emphasis in the original). The undersigned, though, finds the reasoning put forth by the Tenth Circuit in Haddock to be more persuasive.

In Haddock, the Tenth Circuit noted that the ALJ "has a duty to fully develop the record even when the claimant is represented by an attorney." 196 F.3d at 1091. This is in accord with the Ninth Circuit's holding on this issue. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The Tenth Circuit then went on to state:

> Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within this duty.

Haddock, 196 F.3d at 1091. The reasoning of the Tenth Circuit also appears to be much more in line with the plain requirements of SSR 00-4p, which places an "affirmative responsibility" on the ALJ to ask the vocational expert "about any possible conflict" between the evidence provided by the vocational expert and the information provided in the DOT, and, if there appears to be such a conflict, to "obtain a reasonable

explanation for the apparent conflict."[6] SSR 00-4p, 2000 WL 1898704 *4.

Given the ALJ's express duty here, it is clear that he erred in failing to ask the vocational expert if her testimony – i.e., that in her experience employers hire entry level applicants for the job of telemarketer – was in conflict with the DOT's requirement that those who perform that job must have an SVP of 3. As noted above, an SVP of 3 indicates a period of over one month up to and including three months of time is required "by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C. Clearly, though, this required period is not consistent with the vocational expert's testimony that entry level applicants are hired by employers for the job of telemarketer. The ALJ, however, did not ask the vocational expert about this discrepancy, nor did he resolve it in his decision.[7] His failure to do so was improper.

The undersigned also agrees with plaintiff that Level 3 reasoning – which, according to the DOT, is

---

[6]Indeed, as pointed out by plaintiff, the Seventh Circuit more recently in Prochaska v. Barnhart, 545 F.3d 731 (7th Cir. 2006), has repudiated its prior reasoning in Donahue, and instead explicitly agreed with that set forth in Haddock:

> Relying on *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002), the magistrate judge here decided that Prochaska forfeited her SSR 00-4p argument by failing to raise it at the hearing. *Donahue* is our only interpretation to date of the ALJ's obligation under that Ruling. It notes in dicta (because the Ruling was promulgated after the hearing in that case) that SSR 00-4p "requires the ALJ to '[e]xplain [in the] determination or decision how any conflict [with the Dictionary [of Occupational Titles]] that has been identified was resolved.'" *Id.* at 279 F.3d at 446. But the Ruling "emphasizes that before relying on [a vocational expert's] evidence to support a disability determination or decision," an ALJ must perform the required inquiry. SSR 00-4p (emphasis added). And since *Donahue*, other circuits have held that the Ruling imposes "an affirmative duty on the part of an ALJ to inquire about conflicts between vocational expert testimony and the DOT." *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir.2005); see also *Hackett v. Barnhart*, 395 F.3d 1168, 1174-75 (10th Cir.2005); *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir.2002). In *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir.1999), the Tenth Circuit explained the Ruling's core requirement:
>
>> [B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.
>
> *See also Hackett*, 395 F.3d at 1175 (SSR 00-4p "essentially codifies *Haddock*"). Prochaska was not required to raise this issue at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ.

Id. at 735. The Commissioner, furthermore, conceded this issue in Prochaska. Id. at 735-36 ("The government concedes that the ALJ failed to comply with SSR 00-4p and explicitly waives any argument that *Donahue* excuses that failure.").

[7]The ALJ merely stated in his decision that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Tr. 22. However, the ALJ did not explain how the two were or could be consistent with each other, given that as explained above, at least in terms of the telemarketer job, the vocational expert's testimony clearly conflicted with the definition thereof contained in the DOT.

REPORT AND RECOMMENDATION
Page - 6

required by both the surveillance system monitor and telemarketer jobs – is inconsistent with a limitation to simple, routine and repetitive work. See DOT 379.367-010; DOT 299.357-014. In arguing the ALJ did not err here, defendant first appears to equate simple, routine and repetitive work to the definition of unskilled work contained in the Commissioner's regulations, which is work needing "little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). A job is deemed unskilled if "a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." Id.; see also SSR 00-4p, 2000 WL 1898704 *3 ("[U]nskilled work corresponds to an SVP of 1-2.").

First, though, according to the Commissioner's own rulings, a job such as telemarketer, requiring an SVP of 3 is semi-skilled, rather than unskilled, work. See SSR 00-4p, 2000 WL 1898704 *3 (SVP of 2 corresponds to unskilled work). Accordingly, even under defendant's own argument here, this job would be precluded by the ALJ's limitation to simple, routine and repetitive work, as that limitation would equate to unskilled work. In addition, defendant's argument is at odds with other courts that have considered the issue of a job's SVP versus its GED reasoning level. While the Ninth Circuit has not decided this issue, at least one other district court in this circuit, faced with a substantially similar situation and argument made by the Commissioner, has done so, resolving it as follows:

> . . . Key to the present case is the ALJ's finding that Meissl's ailments limited her to work involving simple tasks performed at a routine or repetitive pace. Meissl asserts that such a restriction is inconsistent with her ability to perform any of the other work as the descriptions of those jobs in the Dictionary of Occupational Titles ("DOT") require a higher reasoning capacity than that allowed by the ALJ's RFC.
>
> Meissl argues that the rub comes from the fact that the other work, which the ALJ pointed to as something which she could perform and, hence, the reason for denying her benefits, requires a level of reasoning beyond that contemplated as "simple, repetitive."
>
> The DOT describes the stuffer job as requiring a reasoning level of two out of a six-point scale. A level two reasoning indicates that the job requires the person to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT 1011 (4th ed. rev. 1991). This leaves the question of whether such a reasoning level is consonant with a limitation to simple, repetitive mental tasks.
>
> The Commissioner argues that it does, but does so by pointing to a separate vocational consideration listed in the DOT-a job's specific vocational preparation ("SVP") score. The stuffer job is considered an unskilled one under the DOT's SVP scores. The Commissioner contends that because the job had an SVP level of two, which essentially is unskilled work, the vocational expert's opinion does not conflict with the DOT. . . . Unskilled work is defined under Social Security regulations as

> requiring little or no judgment to do simple duties that can be learned on the job in a short period of time. *See* 20 C.F.R. § 416.968(a). Because the job duties for Meissl's work as a stuffer would be simple ones, the Commissioner posits that the reasoning required to perform those jobs must necessarily be simple as well and, hence, not in conflict with the ALJ's "simple, repetitive" functional restriction.
>
> The problem for the Commissioner is that she is conflating two separate vocational considerations. Other courts decided that, contrary to the Commissioner's argument here, the SVP level in a DOT listing indicating unskilled work, does not address whether a job entails only simple, repetitive tasks. *See, e.g., Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir.1997); *Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D.Okla. Oct.15, 2004); *Hall v. Barnhart*, 2004 WL 1896969, at *3 (D.Me. Aug.25, 2004). A job's SVP is focused on "the amount of lapsed time" it takes for a typical worker to learn the job's duties. DOT at 1009. A job's reasoning level, by contrast, gauges the minimal ability a worker needs to complete the job's tasks themselves. As one court noted, "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings." *Hall-Grover v. Barnhart*, 2004 WL 1529283, at *4 (D.Me. April 30, 2004). Here, the one vocational consideration directly on point with the limitation contained in the RFC is a job's reasoning level score.

Meissel v. Barnhart, 403 F.Supp.2d 981, 982-83 (9th Cir. 2005) (footnote and internal citation omitted).

The undersigned finds the reasoning of the above district court's opinion, and that of the other courts cited and quoted therein, persuasive, and hereby adopts it. <u>See, e.g.</u>, <u>Cooper</u>, 2004 WL 2381515 at *4 ("The explanations of SVP in the DOT suggest that the SVP specifies the vocational preparation required to perform a job. The reasoning level . . . appears more similar to whether or not a claimant has a limitation to performing only simple tasks."). Indeed, this appears to be the approach taken by other circuit courts as well. The Eighth Circuit, for example, has noted that:

> . . . The Social Security's own list of unskilled sedentary jobs . . . indicates that many jobs within this range require more than the mental capacity to follow simple instructions. For each job described, the *Dictionary of Occupational Titles* specifies the type of reasoning capabilities the job requires. 2 U.S. Dep't of Labor, *Dictionary of Occupational Titles*, 1010-11 (4th ed. 1991). For instance, a job rated reasoning level one requires the ability to understand and carry out simple instructions, whereas a job rated reasoning level two requires the ability to understand and carry out detailed instructions. *Id.* at 1011. Many of the jobs listed require level two reasoning or higher in the unskilled sedentary job category.

<u>Lucy v. Chater</u>, 113 F.3d 905, 909 (8th Cir. 1997).

The undersigned further agrees with those courts, such as the Tenth Circuit, that have found Level 3 reasoning to be incompatible with a limitation to simple, routine and repetitive work.[8] As the Tenth Circuit recently held in addressing one of the specific jobs at issue here:

---

[8] As pointed out by plaintiff, this issue has yet to be squarely addressed in the Ninth Circuit as well.

REPORT AND RECOMMENDATION
Page - 8

> The DOT states that both surveillance-system monitor and call-out operator require a reasoning level of three, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [, and d]eal with problems involving several concrete variables in or from standardized situations." DOT, Vol. II at 1011; *see id.*, Vol. I at 281 (categorizing surveillance-system monitor as requiring level-three reasoning); *id.* at 207 (same with regard to call-out operator).
>
> Plaintiff argues that her RFC, as found by the ALJ, is incompatible with jobs requiring a reasoning level of three. The ALJ's findings with regard to Plaintiff's RFC include: "Mentally, [Plaintiff] retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." Aplt. App., Vol. II at 32. This limitation seems inconsistent with the demands of level-three reasoning. *See Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir.1997) (rejecting contention that a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of two or higher). We note that level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Vol. II at 1011. This level-two reasoning appears more consistent with Plaintiff's RFC.

Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005). The undersigned agrees with the Tenth Circuit that jobs which require a reasoning level of 3 are incompatible with a restriction to simple, routine and, in this case, repetitive work. Thus, because the ALJ did not ask the vocational expert whether her testimony regarding the job of surveillance system monitor – and, indeed, that of telemarketer – varied from the definitions of those jobs contained in the DOT, or acknowledge and then resolve any such variance, he erred. See Hall-Grover, 2004 WL 1529283 at *4. As such, the ALJ also erred in finding plaintiff capable of performing either of these jobs, and thus performing other work existing in significant numbers in the national economy, and therefore disabled, at step five.

II. This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

REPORT AND RECOMMENDATION
Page - 9

1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues, as discussed above, still remain as to whether plaintiff is capable of performing other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **January 16, 2009**, as noted in the caption.

DATED this 19th day of December, 2008.

Karen L. Strombom
United States Magistrate Judge